**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaneil Haim Sair*
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com
       nsari@gr-firm.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Alec M. Leslie*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DAVID OLIVER, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>ASAPP, INC.,<br><br>            Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff William David Oliver ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant ASAPP, Inc. ("Defendant" or "ASAPP"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

**NATURE OF THE ACTION**

1.  ASAPP developed and operates a conversation intelligence software-as-a-service ("SaaS") that it sells to, and partners with, third-party businesses (such as American Airlines) so that those businesses can "analyze[] conversations as they happen and provides precise, real-time recommendations and prompts" to agents "during each conversation."[1] To accomplish this, ASAPP employs proprietary software that eavesdrops on a customer's call, transcribes it using natural language processing ("NLP"), and feeds the information into its artificial intelligence ("AI") to read the text, identify patterns, and classify the data. The result is that American Airlines consumers' telephone conversations are surreptitiously transmitted to ASAPP's servers, where it is processed and analyzed using ASAPP's AI and NLP, and thereafter presented to ASAPP's clients in dashboards, searchable transcripts, and reports.

2.  ASAPP's conversation intelligence SaaS includes several services ("Services"), including, *inter alia*, AutoTranscribe, AutoSummary, and AutoAssist. Third party businesses such as American Airlines employ Defendant's Services. ASAPP proudly touts American Airlines as a success story of its Services:

> "American Airlines opened ASAPP AI-powered digital channels for all three main business lines: Reservations, Advantage Customer Service, and Customer Relations. Initially they made digital contact available through the American Airlines mobile app, then broadened to other digital touch points."[2]

---

[1] https://www.asapp.com/press/asapp-launches-generative-ai-autoassist-to-provide-real-time-assistance-for-contact-center-agent#:~:text=on%20hold%20for%20long%20periods%2C,serve%20their%20customers%2C%20making%20it. (last accessed June 19, 2025)

[2] https://www.asapp.com/case-studies/american-case-study (last accessed June 19, 2025)

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                1

3. By employing the Services, American Airlines has aided, agreed with, employed, and/or permitted ASAPP to monitor, read, record, learn the contents of, or otherwise intercept the conversations of their current and prospective consumers without their consent. These consumers include individuals who call American Airlines (*i.e.*, their customer service line) from within the State of California to, among other things, retrieve information, schedule service appointments, make changes to subscriptions, and receive additional forms of customer support.

4. Unbeknownst to consumers, when they contact and speak with businesses such as American Airlines, ASAPP eavesdrops and records these conversations to which it is not a party. By partnering with third party businesses and deploying its Services, ASAPP collects a trove of data from telephone conversations between businesses (in this case, American Airlines) and their consumers.

5. ASAPP needs access to this data to provide the Services' features (including, *inter alia*, call recording, call transcription, and analysis thereof) described below. Thus, ASAPP records, accesses, reads, and learns the contents of conversations between California residents, on the one hand, and businesses, including but not limited to American Airlines, on the other hand.

6. Crucially, neither American Airlines nor ASAPP procured the consent of any person who interacted with American Airlines prior to ASAPP recording, accessing, reading, and learning the contents of conversations between Californian residents and American Airlines.

7. For instance, American Airlines consumers are told: "your call may be recorded and monitored to ensure high-quality service." However, there is no disclosure that consumers' calls will also be shared with ASAPP, an unknown third party, for purposes unrelated to quality assurance and/or training. This lack of consent is particularly troublesome given that ASAPP has the capability to use the contents of those conversations for purposes other than simply relaying the same to American Airlines.

8. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages from Defendant for failing to comply with the California Invasion of Privacy Act ("CIPA") §§ 631 and 632.

**PARTIES**

9. Plaintiff William David Oliver resides in Mountain View, California, intends to remain there, and is, therefore, a citizen of California. Mr. Oliver was in California when he called American Airlines within the last 12 months from the filing of this Complaint to, *inter alia*, reserve and manage his travel arrangements. Mr. Oliver reasonably expected that his conversation with American Airlines was only between himself and American Airlines. Mr. Oliver was not aware, nor did he have any reason to suspect, that his phone call was being surreptitiously transmitted to an unknown third party software analytics provider: ASAPP.

10. Nonetheless, ASAPP, through the Services, eavesdropped on Mr. Oliver's entire conversation with American Airlines. Specifically, ASAPP, through the Services, recorded and transcribed Mr. Oliver's conversation in real time and performed AI analysis thereon. Through this process, ASAPP read, learned, and used the contents of Mr. Oliver's conversation with American Airlines in real time. Both ASAPP and American Airlines failed to inform Mr. Oliver, prior to recording: (i) that a third party, ASAPP, was listening in on his communications with American Airlines, (ii) that a third party, ASAPP, was tapping or otherwise making an unauthorized connection with Mr. Oliver's telephone conversation using the Services, and (iii) that the contents of Mr. Oliver's confidential communications with American Airlines were being recorded, collected, intercepted, and analyzed by a third party, ASAPP, using the Services.

11. Nor did Mr. Oliver provide consent for the contents of his communications to be used for purposes other than American Airlines' internal training or quality assurance purposes, such as ASAPP's marketing analytics, AI development, and industry reports, amongst other uses, as discussed *infra*. Therefore, Mr. Oliver did not consent to ASAPP intercepting or recording his calls to American Airlines, nor did he consent to the contents of his communication to be used by American Airlines or ASAPP for the full scope of the Services or ASAPP's other uses of the call recordings.

12. Plaintiff has, accordingly, had his privacy invaded due to ASAPP's violations of CIPA alleged herein.

13. Defendant ASAPP, Inc. is a Delaware corporation with its principal place of business in New York.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

15. The Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

I. **The California Invasion Of Privacy Act**

17. The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens. The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

18. The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap his telephone or listen in on the call*." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added).

19. Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*

> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

20. As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

21. CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

22. As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

23. Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1). Plaintiff does so here against ASAPP.

II. **Defendant Violates The California Invasion Of Privacy Act**

24. ASAPP is a leader in AI conversation analytics, describing itself as "the AI cloud company for contact centers."[3] To accomplish this, Defendant uses "generative AI" platform

---

[3] https://www.asapp.com/press/asapp-launches-generative-ai-autoassist-to-provide-real-time-assistance-for-contact-center-agent#:~:text=NEW%20YORK%2C%20May%2009%2C%202023,and%20bottom%20performers%2C%20enhancing%20their (last accessed June 4, 2025)

services that have been trained on "millions or billions of related customer data points"[4] enabling the company's software to identify patterns and trends within high-volume customer call centers. ASAPP's conversation intelligence software-as-a-service ("SaaS") includes several services such as: AutoTranscribe, AutoSummary, and AutoAssist (the "Services").

25. AutoTranscribe is "an AI service that provides the market's most accurate, real-time, speech-to-text transcription service."[5] By employing this feature, companies are able to "[c]apture every word with unmatched accuracy and speed to enable QA, insights extraction, and real-time AI support for agents and customers."[6] Furthermore, its "transcripts boost the performance of other AI services like virtual agents, next-best action suggestions, and structured data extraction."[7]

26. AutoSummary is "an AI service API that automates after-call work and generates conversation summaries and analytics-ready data."[8] This feature provides free text summaries and custom data extraction to understand customer calls and enhance KPIs. It helps identify automation opportunities, analyze cross-sell effectiveness, and detect anomalies to improve the customer experience."[9] AutoSummary is even capable of providing "detailed insights into customer sentiment."[10] Companies " use these insights to identify custom data, intents, topics, entities, sentiment drivers, and other structured data from every voice or chat (message) interaction between a customer and an agent."[11]

---

[4] https://www.asapp.com/blog/using-automation-to-increase-revenue-during-customer-conversations#:~:text=product%20offering%20or%20upgrade,those%20insights%20in%20real%20time (last accessed June 4, 2025)

[5] https://www.asapp.com/press/asapp-launches-generative-ai-autoassist-to-provide-real-time-assistance-for-contact-center-agent#:~:text=,text%20transcription%20service (last accessed June 4, 2025)

[6] https://www.asapp.com/products/autotranscribe (last accessed June 4, 2025)

[7] *Id.*

[8] *Supra*, fn. 4.

[9] https://www.asapp.com/products/autosummary (last accessed June 4, 2025)

[10] https://www.asapp.com/solutions/csat-improvement (last accessed June 4, 2025)

[11] https://docs.asapp.com/autosummary (last accessed June 4, 2025)

27. AutoAssist "analyzes conversations as they happen and provides precise, real-time recommendations and prompts to support agents automatically."[12] This feature functions through "machine-learning models [that] analyze interactions" between customers and agents "to understand effective words and actions."[13] These "insights are fed into [ASAPP's] Generative AI products and automated workflow capabilities, guiding other agents on what to say and do."[14]

28. ASAPP agglomerates the data from these features into its "Speech Analytics" solution which permits businesses to "[a]nalyze agent activity in depth, providing insights into how agents serve customer needs and identifying automation and performance improvement opportunities" and "[e]xtract valuable data about customer care-abouts, operational efficiency, and CX performance from every call."[15]

29. When ASAPP uses the Services on a phone conversation, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, ASAPP—a separate and distinct third-party entity from the parties to the conversation—uses the Services to eavesdrop upon, record, extract data from, and analyze a conversation to which it is not a party. This is because ASAPP itself is collecting the content of any conversation. That data is then analyzed by ASAPP in the manner alleged above before being provided to any entity that was a party to the conversation (like American Airlines).

30. ASAPP has the capability to use the contents of conversations it collects through Services for its own purposes and purposes beyond simply furnishing recordings to its clients, such as American Airlines.

31. In fact, when a business engages ASAPP to provide the Services, ASAPP's standard contract unequivocally states that those businesses:

> "grant ASAPP... a limited, non-exclusive... license to use, reproduce, distribute, display and transmit Customer Data to provide the Services…including, without

---

[12] *Supra*, fn. 4.

[13] https://www.asapp.com/solutions/real-time-agent-assist#how-it-works (last accessed June 4, 2025)

[14] *Id.*

[15] https://www.asapp.com/solutions/speech-analytics (last accessed June 4, 2025)

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                       7

limitation, using, compiling, labeling, annotating, transcribing and otherwise analyzing Customer Data to develop, train, tune, enhance and improve the natural language understanding, machine learning and artificial intelligence and speech recognition models, and the underlying algorithms and other components of ASAPP's software and services."[16]

32. The contract further provides that in hiring ASAPP their client "acknowledges and agrees that Customer Data may be accessed by ASAPP employees and contractors located outside the U.S in order to carry out the Services and ASAPP's other obligations[.]"[17]

33. Thus, ASAPP has the capability to use the wiretapped data it collects through the Services to, *inter alia*, provide, run, personalize, improve, operate, maintain, and market its products and services, and to conduct performance reporting.

34. ASAPP knows that consumers of American Airlines are unaware that ASAPP is monitoring, recording, and/or analyzing their conversations. Nonetheless, ASAPP violates consumers' privacy rights, without the requisite consent, in pursuit of profit.

## CLASS ALLEGATIONS

35. Plaintiff seeks certification of the following class: all California residents who called American Airlines while in California and whose conversations were intercepted and recorded by ASAPP (the "Class").

36. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

37. The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have

---

[16] https://d7umqicpi7263.cloudfront.net/eula/hfH4Trv1t-_ZmdT3UZ4fYHxKyZMM6vhXj_MQcCqL_h8#:~:text=Term%20to%20use%2C%20reproduce%2C%20distribute%2C,components%20of%20ASAPP%E2%80%99s%20software%20and (last accessed June 4, 2025)

[17] *Id.*

been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

38. **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class render joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

39. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following: whether Defendant violated CIPA §§ 631 and 632; whether Defendant sought or obtained prior consent—express or otherwise—from Plaintiff and the Class; and whether Plaintiff and members of the Class are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit.

40. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class members, called American Airlines' telephone lines and had the content of their communications read, learned, analyzed, and/or examined by ASAPP.

41. **Adequate Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

42. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class. Each individual member of the

Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631(a)

43. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

44. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

45. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

46. To establish liability under CIPA § 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> *Or*

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the

contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

47. The Services are a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

48. ASAPP is a separate legal entity from American Airlines that offers "'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, ASAPP was a third party to any communication between Plaintiff and members of the Class, on the one hand, and American Airlines, on the other. *Id.* at 521; *see also Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) ("[T]he complaint makes clear that it is Twilio, not its clients, that recorded the communications … The allegations are not, as Twilio asserts, that Twilio simply provided a software product that third parties misused.").

49. ASAPP is a third party wiretapper because it has the capability to use the contents of conversations it collects through the Services for its own purposes, other than simply furnishing the recording to its clients, such as American Airlines. *Javier v. Assurance IQ, LLC*, 2649 F. Supp. 3d 891, 900 (N.D. Cal. 2023); *see also Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023).

50. At all relevant times, through the Services, ASAPP violated the first prong of CIPA § 631(a) by intentionally tapping, electrically or otherwise, the lines of telephone communication between Plaintiff and Class Members, on the one hand, and American Airlines, on the other hand.

51. At all relevant times, through the Services, ASAPP violated the second prong of CIPA § 631(a) by willfully and without the consent of all parties to the communication, or in any

unauthorized manner, reading or attempting to read or learn the contents of electronic communications between Plaintiff and Class Members, on the one hand, and American Airlines, on the other hand, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

52. ASAPP failed to inform Plaintiff and Class Members: (i) that ASAPP, as a third party, was listening in on communications between Plaintiff and Class Members, on the one hand, and American Airlines, on the other hand; (ii) that ASAPP, as a third party, was tapping or otherwise making an unauthorized connection with Plaintiff's and Class Members' conversations with American Airlines using the Services; and (iii) that the content of Plaintiff's and Class Members' communications with American Airlines were being recorded, collected, intercepted, and analyzed by, ASAPP, a third party.

53. Accordingly, neither Plaintiff nor any Class Member consented to ASAPP's interception of their communications with American Airlines.

54. ASAPP knows it is a separate and distinct third-party entity from American Airlines and customer service agents, the consumers speaking with American Airlines, and the conversations at issue. ASAPP knows it is eavesdropping upon and recording conversations to which it is not a party.

55. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of ASAPP's violations of CIPA § 631(a).

### COUNT II
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 632(a)

56. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

57. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

58. CIPA § 632(a) prohibits an entity from "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to

eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a).

59. The Services are an "electronic amplifying or recording device."

60. At all relevant times, ASAPP intentionally recorded the confidential communications of Plaintiff and Class Members.

61. At all relevant times, the communications between Plaintiff and the Class Members, on the one hand, and American Airlines, on the other, were confidential. Communications entail discussions of financial information for travel reservations, modifications, special accommodations, and other forms of information required for the purpose of identity verification.

62. When communicating with American Airlines, Plaintiff and Class Members had an objectively reasonable expectation of privacy. Plaintiff and the Class Members did not expect that ASAPP, an unknown third party, would intentionally use an electronic amplifying or recording device to record their confidential communications.

63. Plaintiff and the Class Members did not consent to ASAPP's intentional use of an electronic amplifying or recording device to record their confidential communications.

64. Pursuant to Cal. Penal Code § 637.2, Plaintiff and the Class Members have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of ASAPP's violations of CIPA § 632(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statute referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: June 19, 2025

Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC.**

By: /s/ Adrian Gucovschi

Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari*
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com
         nsari@gr-firm.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Alec M. Leslie*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jmarchese@bursor.com
          aleslie@bursor.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff*